## Pope, Appellant, *v.* Dascher.

Argued November 17, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edwin B. Barnett,* for appellant.

*Philip A. Brégy,* with him *William M. Marutani, Kalman E. Fine,* and *MacCoy, Evans & Lewis,* for appellees.

OPINION BY MR. JUSTICE JONES, April 16, 1968:

The issue raised upon this appeal is whether a court of common pleas or the orphans' court had jurisdiction to determine the ownership of certain realty recorded in decedent's name at the time of death and of certain shares of corporate stock registered in decedent's name at the time of death. The Court of Common Pleas of Philadelphia County ruled that jurisdiction was in the orphans' court. The validity of that ruling is challenged on this appeal.

William Pope, in 1915, founded Crescent Nut and Chocolate Company (Crescent), a corporation, and, when he died in 1921, he was the sole owner of all Crescent's stock as well as the realty upon which the business was then being conducted. Under his will, the Crescent stock and the business realty passed to

his widow, Elizabeth Pope. Thereafter, allegedly, Robert and Benjamin Pope, sons of William and Elizabeth Pope, conducted Crescent's business. In 1932, without consideration, Elizabeth Pope transferred all the Crescent stock, except 10 shares, to Robert Pope and, on the same day, executed a will bequeathing the remaining 10 shares of Crescent stock and devising the business realty to Robert Pope.[1]

Upon Elizabeth Pope's death in 1936, Robert Pope became the record owner of all Crescent's stock and the business realty and, allegedly, Robert Pope reaffirmed to his brother that he was holding all the aforementioned property for the mutual benefit of his brother and himself. Thereafter, when other business realty was acquired, title to such realty was taken in the names of Robert Pope, Annie Pope (Robert's first wife), and Benjamin Pope. In 1959, Benjamin Pope and his wife conveyed all their interest in the business realty to Robert Pope.[2]

In 1960, Benjamin Pope died survived by his widow and one child, Benjamin Pope, Jr., the appellant. It is alleged that, subsequent to Benjamin Pope's death, Robert Pope repeatedly assured appellant that he would continue to hold half of the stock and the business realty for appellant's benefit and that, upon his death, the other half of the stock and business realty would pass to appellant, provided appellant did not demand a division of such property during Robert Pope's lifetime.

---

[1] It is alleged that these transactions were induced by Robert Pope's representations to his mother that he would hold all this property for the mutual benefit of himself, his brother Benjamin and their respective issue.

[2] The deed evidencing such conveyance was not recorded until 1963. This conveyance, allegedly, was made upon Robert Pope's representations that he would hold this realty for Benjamin Pope and himself.

In 1963, Robert Pope conveyed the business realty to himself and his second wife, Naomi Pope, as tenants by the entireties and, allegedly, advised appellant and others that he and Naomi Pope were holding the assets for the mutual benefit of appellant, himself and Naomi Pope. In 1965, Robert Pope died survived only by his wife, Naomi Pope. Under his will, the Crescent stock and the business realty were left in trust for appellant provided Naomi Pope failed to survive Robert Pope for a period of 120 days but, in the event of her survival, such assets would pass to Naomi Pope. Naomi Pope survived Robert Pope for a period in excess of 120 days and it is alleged that she advised appellant she was holding all the assets for appellant's benefit, that she intended to terminate the constructive trust by transferring the assets to appellant while she lived, that she instructed her counsel to prepare the appropriate instruments to effect such a transfer and did furnish, through her counsel, to appellant's counsel the necessary data for the preparation of an assignment of the stock certificates.

Naomi Pope never executed any of the papers necessary to effect the conveyances and when she died, on February 7, 1967, she was the registered owner of all of the Crescent stock and the record title owner of the business realty. Naomi Pope's will was duly probated in the Orphans' Court of Philadelphia County. Under that will neither the Crescent stock nor the business realty were bequeathed or devised, and, under such circumstances, such assets would pass, in the event a constructive trust be not established, under the intestate laws. In such event, Naomi Pope's two sisters and her brother, the appellees, would take.

Appellant instituted this equity action in the Court of Common Pleas of Philadelphia County seeking the declaration of a constructive trust under which he

would become the owner of all the Crescent stock and the business realty. Appellees' preliminary objections averring a lack of jurisdiction in the court of common pleas were sustained and from such ruling the instant appeal was taken.

Insofar as the Crescent stock is concerned, the appropriate tribunal to determine the title to such stock is mandated by §301(1)(13), of the Orphans' Court Act of 1951, August 10, P. L. 1163, as amended, 20 P.S. §2080.301(1)(13), which read as follows: "The orphans' court shall have exclusive jurisdiction of: (1) *Decedents' Estates.* The administration and distribution of the real and personal property of decedents' estates . . . (13) *Title to Personal Property.* The adjudication of the title to personal property in the possession of the personal representative, or *registered in the name of the decedent* or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death." (Emphasis added). In *Webb Estate,* 391 Pa. 584, 587, 588, 138 A. 2d 435 (1958), we said: "[Section 301 (13)] considerably broadened the scope of the court's jurisdiction and jurisdiction now exists where the following situations arise: (1) If the personalty was in decedent's possession, actually or presumptively, at the time of death; (2) if the personalty came into the possession of decedent's personal representative subsequent to his death; (3) if neither (1) nor (2) exist, but if the personalty was 'registered' in the name of decedent or his nominee; (4) if there is an allegation by the personal representative that the personalty was in possession of the decedent when he died."

Appellant concedes that, at the time of Naomi Pope's death, the Crescent stock was *registered in her name.* In his action, appellant seeks a declaration from the court that title to the Crescent stock, although

registered in decedent's name, was actually vested in him. Under such circumstances, §301 (13), supra, controls and mandates that the Orphans' Court, to the exclusion of any other tribunal, has sole jurisdiction to determine the question of title to this stock.

Insofar as the business realty is concerned, a somewhat different question arises because §301(13) deals only with personalty and not with realty.

Appellant's argument is that the Orphans' Court Act of 1951, supra, neither expressly nor by implication, ousted a court of common pleas of jurisdiction over disputes involving constructive trusts even though the alleged constructive trustee be a decedent. Appellant correctly argues that §301 (3) which gives the Orphans' Court exclusive jurisdiction over *inter vivos* trusts does not include a trust created by operation of law, i.e., a resulting or a constructive trust. The statutory definition of an "inter vivos trust" (Orphans' Court Act of 1951, supra, §102 (6), 20 P.S. §2080.102) expressly and unequivocally excludes "resulting" or "constructive" trusts. See: *Potteiger v. Fidelity-Philadelphia Trust Co.*, 424 Pa. 418, 227 A. 2d 864 (1967).[3]

However, appellant overlooks the impact of §§301 (1) and 302 (1) of the Orphans' Court Act of 1951, supra, 20 P.S. §§2080.301, 302. Section 301 (1) gives the Orphans' Court *exclusive* jurisdiction over the "administration and distribution of the *real . . .* property of decedents' estates. . . ." (Emphasis added). Section 302 (1) gives the Orphans' Court *concurrent* jurisdiction over the "determination of the persons to whom the title to real estate of a decedent . . . has passed by devise or descent. Provided, That nothing herein shall be construed to restrict the exclusive jurisdiction of

---

[3] Our disposition of this appeal must not be construed as a recognition that a constructive trust did arise under the instant circumstances.

the orphans' court to distribute real estate in an estate . . . within its jurisdiction."

A review of our case law reveals the fallacy of appellant's position. In *Johnson v. Trustees of the General Assembly*, 408 Pa. 31, 182 A. 2d 724 (1962), the decedent's widow claimed that certain realty, the title to which was recorded in the names of certain trustees, was actually owned by decedent, the recordation of such realty in the trustees' names being for the purpose "of avoiding his legal responsibility". In *Johnson*, we said, inter alia: 'If it is [the widow's] theory, as expressly averred in the complaint, that [decedent] died *seized* of the real property, then clearly the orphans' court which has exclusive jurisdiction over the administration and distribution of the real property of the estate of the decedent would be the only appropriate forum: Orphans' Court Act of 1951, supra, §301 (1)." (p. 35).

In *Tallarico v. Bellotti*, 414 Pa. 535, 200 A. 2d 763 (1964), a wife, whose death occurred in 1959, had conveyed realty to herself and husband as tenants by the entireties. The husband remarried and died in 1963. Children of the first marriage instituted an equity action in a court of common pleas against the administratrix of the husband's estate alleging that they were entitled to the realty because their mother—the first wife—by an instrument in writing, prior to the creation of the tenancy by entireties, had conditioned the creation of the tenancy by the entireties by providing that the realty would pass to the children in the event of the remarriage of the surviving tenant by the entireties. We held that *exclusive* jurisdiction, under the circumstances, was in the orphans' court, stating, inter alia: "Appellees contend that even if the property is an asset of decedent's estate, the Orphans' Court of Washington County has only concurrent ju-

risdiction to determine title to the real estate and that the court of common pleas properly has jurisdiction over this dispute.

"Assuming, for the moment, that a question of title is here involved, §302 of the Orphans' Court Act of 1951, August 10, P. L. 1163, §302, as amended, 20 P.S. §2080.302 (Supp. 1963), does vest in the orphans' court concurrent rather than exclusive jurisdiction to determine title to real estate of a decedent. However, this controversy should be before the orphans' court, the jurisdiction of which attached first by virtue of the granting of letters of administration on September 27, 1963, prior to the filing of the instant action. 'It is well-established that orderly judicial procedure dictates that the court which first acquires jurisdiction over a matter be permitted to decide all questions relating thereto.' [citing an authority].

"Holding as we do that the subject property is an asset of decedent's estate, at least for purposes of administration, the grant of letters by the register of wills is a judicial function, [citing an authority], and is but the first step in the administration and distribution of a decedent's estate by the orphans' court.

"For the purpose of the limited issue before us, the Orphans' Court of Washington County *first acquired jurisdiction over decedent's assets,* and all matters pertaining thereto should be directed to its attention. (Emphasis added).

"Moreover, under the circumstances of this case, still assuming a question of title is involved, the orphans' court is the more appropriate forum in which to achieve a determination of all questions. [citing *Johnson,* supra].

"However, as we view this case, on the pleadings before us, the issue is really not one of title to the property, because it is clear that record title was in

the decedent at the time of his death. The more relevant matter is one of administration of his estate and distribution of its assets over which the orphans' court has exclusive jurisdiction. Orphans' Court Act of 1951, August 10, P. L. 1163, §301, as amended, 20 P.S. §2080.301 (Supp. 1963)." (pp. 538, 539).

*Tallarico* controls the instant litigation.

Appellant relies upon *Hughes v. Bailey,* 202 Pa. Superior Ct. 263, 195 A. 2d 281 (1963). *Hughes* is contrary to both *Johnson* and *Tallarico* and, in this respect, is not controlling.

The Orphans' Court Act of 1951, supra, in an attempt to avoid the jurisdictional disputes between courts of common pleas and orphans' courts which had arisen prior to its passage, gave to the orphans' court plenary power to deal with problems involving the distribution not only of personalty but also of realty of a decedent's estate. In the case at bar, the probate of the will of decedent antedated the institution of appellant's action in the court of common pleas. By the probate of decedent's will, the orphans' court acquired *prior* jurisdiction over the distribution of the realty titled in decedent's name and the orphans' court, under §304 of the Orphans' Court Act of 1951, supra, 20 P.S. §2080.304, has "all legal and equitable powers required for or incidental to the exercise of its jurisdiction."

Our instant ruling must not be construed as sanctioning the inclusion of "constructive trusts" within the *exclusive* jurisdiction of the orphans' court; the statute contraindicates such inclusion. On the contrary, the orphans' court has only a *concurrent* jurisdiction to determine the persons to whom title to realty of a decedent passes. However, where, as in the case at bar, the orphans' court has *first* acquired jurisdiction, such jurisdiction should not be ousted, particu-

larly where the issue ultimately involves the distribution of realty titled in a decedent's name at the time, a distribution which the legislature clearly vests in the orphans' court. The legislature by the enactment of the Orphans' Court Act of 1951 sought to eliminate disputes over jurisdiction between courts of common pleas and orphans' courts. The courts should not defeat such legislative aim by strained interpretations of the statute.

Decree affirmed. Appellant to pay costs.