Eberhardt *v*. Ovens, Appellant.

Argued April 29, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused January 8, 1970.

*Angelo A. Di Pasqua,* with him *Robert T. Gownley,* and *Caine, Di Pasqua & Edelson,* for appellant.

*Laurence H. Eldredge,* with him *J. Julius Levy, James K. Peck* and *James K. Peck, Jr.,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 28, 1969:

Arthur Ovens, a resident of Lackawanna County, died testate on November 21, 1965. His will was probated in the office of the Register of Wills on November 29th and letters testamentary were issued on the same date to his wife as the executrix of his estate.

At the time of his death Ovens was the registered owner of a transportation business known as "Ovens Motor Freight." On September 15, 1966, Victor Eberhardt filed a complaint in equity in the Court of Common Pleas claiming that he was a partner in "Ovens Motor Freight"[1] and, as the surviving partner, had the exclusive right to wind up the business. After a hearing, the chancellor filed an adjudication finding that Ovens and Eberhardt owned the business under a partnership agreement at the time of Ovens' death and entered a decree nisi granting relief to Eberhardt consistent with the adjudication. Subsequently, exceptions to the adjudication and decree nisi were dismissed by the court en banc, and the chancellor's de-

---

[1] None of the business records of "Ovens Motor Freight" or reports to the ICC or PUC disclosed the existence of any such partnership.

cree was made final. This appeal followed. We will vacate the decree and dismiss the proceedings.

Section 301 of the Orphans' Court Act of 1951, P. L. 1163, 20 P.S. §2080.301, pertinently provides: "The orphans' court shall have exclusive jurisdiction of: . . . (13) The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee . . . ." The comment to this section states that the provision is "intended to obviate, whenever possible, a preliminary dispute as to whether the Orphans' Court has jurisdiction to determine title to the disputed property." Since the instant case involves the question of whether Eberhardt owns part of what appeared to be the property of the decedent, Ovens, i.e., his business, the foregoing section of the Orphans' Court Act applies and exclusive jurisdiction to resolve the controversy is in the Orphans' Court. See *Pope v. Dascher*, 429 Pa. 576, 240 A. 2d 518 (1968), and *Tallarico v. Bellotti*, 414 Pa. 535, 200 A. 2d 763 (1964).

Although the case was argued on the merits in this Court and equity's jurisdiction was not questioned here or below, we conclude that the issue should be raised sua sponte. See and cf. *Commonwealth ex rel. Ransom v. Mascheska*, 429 Pa. 168, 239 A. 2d 386 (1968), and *Balazick v. Dunkard-Bobtown Municipal Authority*, 414 Pa. 182, 199 A. 2d 430 (1964).

Decree vacated and proceedings dismissed. Each party to pay own costs.

CONCURRING OPINION BY MR. JUSTICE JONES:

I join in the majority opinion, both in its rationale and result. However, I file this concurring opinion because of certain suggestions in the dissenting opinion which, in my estimation, are not only erroneous but will cause confusion and uncertainty in this area of the law.

The writer of the dissenting opinion maintains that *Ellis v. Ellis*, 415 Pa. 412, 203 A. 2d 547 (1964), contraindicates the result reached by the majority of the Court. In *Ellis*, we were concerned with the proposed sale of *admittedly* partnership assets of a partnership in which a decedent prior to his death was a partner; in that factual posture, we held that the court of common pleas had jurisdiction to deal with matters concerning the dissolution of the partnership and distribution of assets of the dissolved partnership, and that, *after* the dissolution had been resolved and *after* proceeds of the dissolved partnership had been earmarked as assets of the estate of the deceased partner, *then* the jurisdiction of the orphans' court would attach and that court would distribute the now-identified estate assets.

In the case at bar, since the property was at the time of death in the name of Ovens, the decedent, we are concerned with the question of who *actually owned* property *titled in decedent's name,* a question to be determined—by legislative mandate[1]—*exclusively* by the Orphans' Court. In *Ellis,* the question was the disposition of partnership assets titled not in the name of a decedent but rather in the name of a partnership. The majority opinion does not affect, nor is it affected by *Ellis.* In fact, if the Orphans' Court decides that Eberhardt and Ovens were partners and that the assets, although titled in Ovens' name, were actually owned by the partnership, then the *Ellis* rule applies and the Court of Common Pleas will proceed, within *its* legislatively-mandated power,[2] to dissolve the partnership and determine distribution of the partnership assets. *Ellis* does not govern the instant case.

---

[1] Act of August 10, 1951 (Orphans' Court Act of 1951), P. L. 1163, art. III, §301(13), as amended, 20 P.S. §2080.301(13).

[2] Act of March 26, 1915, P. L. 18, 59 P.S. §93(4).

A second suggestion, with much more serious ramifications, is also raised in the dissenting opinion. The dissenting opinion suggests that Section 4 of the Schedule to Article 5 of our new Constitution has had the effect of abolishing *all* jurisdictional distinctions formerly drawn between the courts of common pleas and orphans' courts. This suggestion is of such significance that it cannot go unanswered.

Prior to the recent amendments to our Constitution, we had two separate courts in this Commonwealth—courts of common pleas and orphans' courts.[3] Over many years, the *jurisdiction* and *functions* of each of these two courts were delineated and distinguished and were clearly and distinctly understood by the bench and bar of this Commonwealth. The recent amendment to our Constitution abolished both orphans' courts[4] and the courts of common pleas as they had previously existed and replaced both courts with a broader type of court, known as the Court of Common Pleas. While the Constitutional amendment abolished the orphans' court *as such,* it did not, either expressly or by implication, extinguish and destroy what had been the jurisdiction and functions formerly exercised by the orphans' courts. On the contrary, Section 4 of the Schedule to the Judiciary Article provides that the former orphans' courts shall now be "divisions" of the reconstituted Court of Common Pleas: "Orphans' courts in judicial districts having separate orphans' courts shall become orphans' court divisions of the courts of common pleas and the court of common pleas in those judicial districts shall exercise the *jurisdiction*

---

[3] There were also other courts, such as county courts, etc., the jurisdiction of which is not at issue in this litigation.

[4] The writer of this opinion believed at the time and still believes that the abolition of the orphans' court was unnecessary and added nothing to a more efficient administration of justice under an *amalgamated* court system.

presently exercised by the separate orphans' courts *through their respective orphans' court divisions."* (Emphasis supplied) Section 4 renders clear beyond any doubt that the *jurisdiction* and *functions* formerly exercised by *separate* orphans' courts are now to be exercised by the amalgamated Court of Common Pleas *only* through the Orphans' Court Division of the Court of Common Pleas.[5]

A recent legislative enactment has confirmed that, in the legislative mind, at least, the former distinction between the two courts has merely been replaced by an equivalent distinction between the Courts of Common Pleas and their respective orphans' court divisions. The Act of March 27, 1969, P. L. (Act No. 5 of 1969, 17 P.S. §240) was designed to effectuate the new judicial system in Philadelphia County.[6] That Act specifically provides that of the fifty-six judges of the Court of Common Pleas, six of these judges shall be assigned to the orphans' court division. That Act further provides that, although judges may temporarily be assigned to another division, they "shall nonetheless remain members of their original division." Our new Constitution was designed to permit the assignment of judges from one division to another in order to expedite court business; however, this is a very far cry from an *abolition* of *jurisdictional* and functional distinctions among the several divisions.

If the delegates to the Constitutional Convention had desired to do what the dissenting opinion now suggests, they certainly could have done so. However, they did not choose this course.

------

[5] To follow the suggestion and implication of the dissenting opinion would indicate that the Constitutional amendment has repealed the Orphans' Court Act of 1951, as amended, and other statutes dealing with the jurisdiction and functions of the orphans' courts.

[6] We, in no sense, pass upon the validity of this legislation.

The Constitution indicates a clear intent that the jurisdiction which was formerly *exclusively* within the province of the orphans' courts is now *exclusively* to be exercised by the orphans' court divisions of the Courts of Common Pleas. The types of matters handled by the divisions are sufficiently different to warrant the decision to retain a system whereby judges with expertise in a given area of the law determine matters in that area.

The dissenting opinion suggests that the court below sits in a "two hat" capacity and that, even though the court below (sitting in its common law equity jurisdiction) erred in entertaining jurisdiction of this matter, it could put on its "other hat" and that it would be futile to reverse the court below and have the matter determined by the orphans' court division. Such a suggestion offends the intent and purpose of the Constitutional amendment, obliterates any distinction between the jurisdiction and functions of the trial division and the orphans' court division of the Common Pleas Courts and constitutes an attempt at judicial legislation, novel in my experience on this Court, which cannot be justified.

An amalgamation of our courts into one court has been accomplished, but the jurisdiction and functions of the several divisions of that court remain unchanged.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I agree with the majority that Section 301 of the Orphans' Court Act of 1951 applies in this case. I disagree, however, with the conclusion that we must now dismiss this case for lack of jurisdiction.

The majority's construction of Section 301, of course, amounts to an overruling of this Court's most recent decision in the area, *Ellis v. Ellis*, 415 Pa. 412, 203 A. 2d 547 (1964). In *Ellis*, this Court held that the question of whether a decedent's partners may

purchase decedent's interest in the partnership was not within the exclusive jurisdiction of the orphans' court. Today, without so much as mentioning *Ellis,* the majority is holding that the preliminary question of whether decedent had a partner (something conceded in *Ellis*) is properly for the orphans' court. I think that the majority should at least give the profession some idea of where it thinks *Ellis* stands today. Certainly the litigants in the instant case deserve some explanation; they no doubt relied on *Ellis* when they chose their forum and litigated the issues without ever objecting to that forum.

I believe that *Ellis* should be expressly overruled. But because of the recent change in our constitution, I must dissent from the majority's decision to dismiss the complaint for lack of jurisdiction. Section 4 of the schedule of the Judiciary Article, Article V, provides that the orphans' courts shall be abolished and the courts of common pleas shall "exercise the jurisdiction of these courts." Thus by constitutional mandate, the court of common pleas now has jurisdiction to hear this case.

The majority's decision to now dismiss this case constitutes, in my view, a failure of proper judicial administration. Neither party objected at trial or on appeal, and no claim of prejudice has been made. The procedures which would be used to re-try this case in the orphans' court would not differ from the procedures which were in fact used to try this case. For example, in neither court would the parties in this controversy have had a right to a trial by jury. See also Orphans' Court Rules §3, Rule 1 (unless otherwise provided by statute or local rule, pleading and practice in orphans' court conforms to common pleas sitting in equity). It is senseless to force the parties to now take their case to what, under our new constitution, is merely a different division of the same court which originally tried

the matter. I see absolutely no reason to now place this useless burden on both the litigants and the courts, and to thus further delay the proper resolution of this controversy.

Accordingly, I dissent.