## DeSzirmay v. Miller

*Jay P. Rose*, for petitioner.

No counsel for respondent.

WILLIAMS, *P. J.*, July 9, 1974.—The instant citation to show cause is a sequel to the petition for a citation "To Compel Return of Decedent's Realty, Wrongfully Transferred" which Melania DeSzirmay, Administratrix of the Estate of William Z. DeSzirmay, filed on November 23, 1968, in what was still, at that time, the Orphans' Court of Pike County.

Section 5 of amended article V of the Pennsylvania Constitution, introducing the new Unified Judicial System, provided:

"There shall be one court of common pleas for each judicial district (a) having such divisions and consisting of such number of judges as shall be provided by law, one of whom shall be president judge; and

"(b) having unlimited original jurisdiction in *all* cases except as may otherwise be provided by law." (Emphasis supplied).

Although the amended article had been approved previously on April 23, 1968, the schedule implementing the article was not to become effective until January 1, 1969. As of that date, section 4 of the schedule abolished the Orphans' Courts (together with other courts specifically designated) and provided that the jurisdiction, hitherto exercised by the Orphans' Courts, shall be exercised by the new Courts of Common Pleas through their Orphans' Courts Divisions.

This petition represents a *collateral attack* upon two decrees previously made by the Court of Common Pleas of Pike County in the equity action of Lewis E. Miller v. Melania DeSzirmay, individually, and as administratrix of the estate of William Z. DeSzirmay, deceased, May term 1955, no. 1.

Plaintiff there had sought the specific performance of a contract to sell real estate made by William Z. DeSzirmay and Melania DeSzirmay, his wife. A hearing had been held at which both De-Szirmays appeared and testified. After William died on March 29, 1960, Melania DeSzirmay, administratrix of his estate, was substituted as party codefendant in his place on October 2, 1962. The court granted specific performance by a decree dated October 21, 1963, and, when defendants did not comply, entered a decree dated December 16, 1963, directing the Prothonotary of Pike County, on payment of the balance of the purchase price by plaintiff, to execute and deliver to him a deed for the property. No timely appeals from these decrees were taken.

Approximately two years later, Melania DeSzirmay, individually, and as adminstratrix, made her *first direct attack* upon these decrees on November 17, 1965, by filing in the Court of Common Pleas a 108-paragraph petition to vacate judgment. Among the multifarious allegations was the assertion, found in paragraphs 34 and 55, that the Court of Common Pleas had no jurisdiction or authority on October 21, 1963, to decree specific performance. The court, without specific reference or discussion, rejected the assertion by implication in the order, dated December 20, 1965, quashing and dismissing the petition, and in an opinion, dated November 23, 1966. Defendants appealed to the Supreme Court January term 1966, (no. 266, and January term 1967, no. 9). On December 20, 1966, these appeals were withdrawn, and, on January 3, 1967, a certificate of discontinuance was filed in the Court of Common Pleas of Pike County.

Against this background, Melania DeSzirmay, administratrix, instituted her collateral attack in the Orphans' Court. Lewis E. Miller, respondent, filed an answer to the petition on December 19, 1968, wherein, under "New Matter," he affirmatively pleaded the case of Lewis E. Miller v. William Z. DeSzirmay and Melania DeSzirmay, May term 1955, no. 1 in equity, as being res judicata of the matter in the petition for a citation. Petitioner filed a preliminary reply on December 31, 1968, a reply on January 4, 1969, and a supplementary reply on January 10, 1969. She also filed a motion to amend the original petition on January 11, 1968, a motion to amend the reply and supplementary reply on January 14, 1968, and a petition to amend the original petition on April 21, 1969. On the same date, the court, now properly known as "The Orphans' Court Division of the Pike County Branch of the Court of Common Pleas of the 43rd Judicial District of the Commonwealth of Pennsylvania" entered an order allowing amendment and also an order, which read:

"AND NOW, April 21, 1969, upon consideration of the within petition and the petition to amend presented in open Court, It is ordered that a Citation issue directed to Lewis E. Miller, the named respondent to show cause, if any he has, why the deed dated December 23, 1963, and recorded in Deed Book Volume 181 at page 410, should not be marked cancelled of record and declared null and void, returnable June 16, 1969, at 10 A.M."

On June 11, 1969, respondent's attorney mailed to the court an answer electing to stand upon the previously filed answer to the original petition and incorporating the material found therein by reference. We note here, parenthetically, that respon-

dent's defense of res judicata could not be effective unless the Court of Common Pleas which made the adjudication was a competent court, i.e., one which possessed jurisdiction over the subject matter: Stevenson v. Silverman, 417 Pa. 187, 190, 191, 208 A.2d 786, 787, 788 (1965), cert. denied, 382 U.S. 833, 86 S. Ct. 76, 15 L.Ed.2d 76 (1965). On this point, petitioner asserted that, after the death of William Z. DeSzirmay the Court of Common Pleas lost its preexisting jurisdiction to decree specific performance, and that the execution of any such power thereafter fell within the exclusive jurisdiction of the Orphans' Court. Resolution of this issue was not made at the time, but was left open for future determination.

With the Orphans' Court proceeding still pending, defendants made their *second direct attack* upon the decrees on June 15, 1970, by filing in the Court of Common Pleas a petition and rule to vacate judgment. This time, the court made an extended explicit analysis of defendants' jurisdictional argument and found it to be without merit. The opinion and order, dated December 30, 1971, dismissing the petition, are reported as Miller v. DeSzirmay, 58 D. & C. 2d 731; and the order and opinion dismissing a petition for reargument, dated June 27, 1972, are reported ibidem, at page 751. These orders represent an adjudication by the Court of Common Pleas of the Forty-third Judicial District that its predecessor, the Court of Common Pleas of Pike County, had jurisdiction of the subject of specific performance in this case at the time when it was exercised, and that the Orphans' Court of Pike County, now succeeded by the Orphans' Court Division of the Pike County Branch of the Court of Common Pleas of the Forty-third Judicial

District, did not have such jurisdiction. No appeals from these orders have been taken.

The way now is clear to bring the record of the proceedings in the Orphans' Court Division to a conclusion. This division adopts, as having been correctly decided, the adjudication of the jurisdictional issue by the new District Court of Common Pleas. The only remaining problem is the correct disposition of the citation to show cause, based, as noted supra, upon the petition filed, in November 1968, in what then was the separate and independent Orphans' Court of Pike County. It is necessary to consider the effect upon disposition of two supervening incidents: (1) The reorganization of the Orphans' Court of Pike County as the Orphans' Court Division of the new District Court of Common Pleas, effective January 1, 1969; and (2) the amendment by the Supreme Court of Pa. R.C.P. 213, effective September 1, 1969, which provides:

"(f) When an action is commenced in a court which has no jurisdiction over the subject matter of the action it shall not be dismissed if there is another court of appropriate jurisdiction within the Commonwealth in which the action could originally have been brought but the court shall transfer the action at the cost of the plaintiff to the court of appropriate jurisdiction. It shall be the duty of the prothonotary or clerk of the court in which the action is commenced to transfer the record together with a copy of the docket entries to the prothonotary or clerk of the court to which the action is transferred."

Prior to inception of the Unified Judicial System, the error of instituting proceedings in a court which had no jurisdiction of the subject matter was considered so fundamental as to warrant dismissal of

the proceedings by the court, sua sponte and without regard to the merits of the case: Balazick v. Dunkard-Bobtown Municipal Authority, 414 Pa. 182, 199 A.2d 430 (1964). Balazick was followed by the Supreme Court in a borderline case: Eberhardt v. Ovens, 436 Pa. 320, 259 A.2d 683 (1969). There, prior to the system, plaintiff had brought an equity action in the Court of Common Pleas of Lackawanna County, September term 1966, no. 13. The court entered a decree for plaintiff. Defendant's appeal (January term 1969, no. 91) reached the Supreme Court after January 1, 1969, the effective date of the system. The Supreme Court held that the Orphans' Court, rather than the Court of Common Pleas, had jurisdiction of the matter, vacated the decree of the lower court and dismissed the proceedings. Although the decision was rendered on November 28, 1969, none of the opinions referred to Pa.R.C.P. 213(f), which already had become effective on September 1, 1969. The majority opinion, by Mr. Justice Eagen, contained no discussion of the impact of the new system upon the case, but Mr. Justice Roberts, in his dissenting opinion (436 Pa., at pages 327, 328; 259 A.2d, at page 686) said:

"The majority's decision to now dismiss this case constitutes, in my view, a failure of proper judicial administration. Neither party objected at trial or on appeal, and no claim of prejudice has been made. The procedures which would be used to re-try this case in the orphans' court would not differ from the procedures which were in fact used to try this case. For example, in neither court would the parties in this controversy have had a right to trial by jury. See also Orphans' Court Rules §3, Rule 1 (unless otherwise provided by statute or local rule, pleading

and practice in orphans' court conforms to common pleas sitting in equity ). It is senseless to force the parties to now take their case to what, under our new constitution, is merely a different division of the same court which originally tried the matter. I see absolutely no reason to now place this useless burden on both the litigants and the courts, and to thus further delay the proper resolution of this controversy."

In his opinion concurring with the majority, Mr. Justice (now Chief Justice) Jones said (436 Pa., at pages 324, 325, 326; 259 A.2d, at pages 685, 686):

"A second suggestion, with much more serious ramifications, is also raised in the dissenting opinion. The dissenting opinion suggests that Section 4 of the Schedule to Article 5 of our new Constitution has had the effect of abolishing *all* jurisdictional distinctions formerly drawn between the courts of common pleas and orphans' courts. This suggestion is of such significance that it cannot go unanswered.

"Prior to the recent amendments to our Constitution, we had two separate courts in this Commonwealth—courts of common pleas and orphans' courts. Over many years, the *jurisdiction* and *functions* of each of these two courts were delineated and distinguished and were clearly and distinctly understood by the bench and bar of this Commonwealth. The recent amendment to our Constitution abolished both orphans' courts and the courts of common pleas as they had previously existed and replaced both courts with a broader type of court, known as the Court of Common Pleas. While the Constitutional amendment abolished the orphans' court *as such,* it did not, either expressly or by implication, extinguish and destroy what had been the jurisdiction and functions formerly exer-

cised by the orphans' courts. On the contrary, Section 4 of the Schedule to the Judiciary Article provides that the former orphans' courts shall now be 'divisions' of the reconstituted Court of Common Pleas: 'Orphans' courts in judicial districts having separate orphans' courts shall become orphans' court divisions of the courts of common pleas, and the court of common pleas in those judicial districts shall exercise the *jurisdiction* presently exercised by the separate orphans' courts *through their respective orphans' court divisions.*' (Emphasis supplied). Section 4 renders clear beyond any doubt that the *jurisdiction* and *functions* formerly exercised by the *separate* orphans' courts are now to be exercised by the amalgamated Court of Common Pleas *only* through the Orphans' Court Division of the Court of Common Pleas.

"...

"The Constitution indicates a clear intent that the jurisdiction which was formerly *exclusively* within the province of the orphans' courts is now *exclusively* to be exercised by the orphans' court divisions of the Courts of Common Pleas. The types of matters handled by the divisions are sufficiently different to warrant the decision to retain a system whereby judges with expertise in a given area of the law determine matters in that area.

"The dissenting opinion suggests that the court below sits in a 'two hat' capacity and that, even though the court below (sitting in its common law equity jurisdiction) erred in entertaining jurisdiction of this matter, it could put on its 'other hat' and that it would be futile to reverse the court below and have the matter determined by the orphans' court division. Such a suggestion offends the intent and purpose of the Constitutional amendment, obliterates any distinction between the jurisdiction and

functions of the trial division and the orphans' court division of the Common Pleas Courts and constitutes an attempt at judicial legislation, novel in my experience on this Court, which cannot be justified.

"An amalgamation of our courts into one court has been accomplished, but the jurisdiction and functions of the several divisions of that court remain unchanged."

In Posner v. Sheridan, 451 Pa. 51, 299 A.2d 309 (1973), the initial proceeding had been instituted in the Family Court Division of the Court of Common Pleas of Allegheny County on January 29, 1970, *after* the inception of the Unified Judicial System and *after* the effective date of Pa. R.C.P. 213(f). On appeal, the Supreme Court vacated the decree on the ground that "[t]he issue was *improperly en-entertained* in the Family Division" (emphasis supplied), and discussed the substantive merits, and remanded the case for further proceedings consonant with the opinion. Mr. Justice Eagen (writer of the majority opinion in Eberhardt, supra), in the majority opinion (451 Pa., at pages 55, 58; 299 A.2d, at pages 311, 312, 313) said:

"The question which this case presents is not one of jurisdiction but of internal common pleas court administration.

". . .

"While the 1968 Constitution had the felicitous result of abolishing the old system of separate courts and amalgamating them into a unified common pleas system, nothing in these new provisions permits plaintiffs to file complaints, or courts to docket them willy-nilly without regard to the appropriate division. In point of fact the language of the Schedule to the Judiciary Article establishes otherwise."

Mr. Justice Pomeroy, concurring (451 Pa., at page 62; 299 A.2d, at page 315), said:

"I agree with the decision of the Court and join in its opinion except for the suggestion (it does not seem to be more than that) that exercise of its jurisdiction by the Court of Common Pleas through the wrong division of that court would, by itself, be cause for this Court to vacate a judgment of the court below. In my view, this would not be so."

Mr. Justice Roberts, who had written the dissenting opinion in Eberhardt, supra, which first raised the issue, dissented (451 Pa., at page 63; 299 A.2d, at page 315) and said:

"The majority says this case 'is not one of jurisdiction.' I agree that this is non-jurisdictional controversy; but, I must dissent from the majority's disregard of that position and its incorrect treatment of the judgment as though it were entered by a court without competency to act. In the absence of a jurisdictional defect, there is no basis for disturbing the judgment duly entered against the defendant—Thomas Sheridan, who did not appear (initially or at any stage of this litigation) to challenge the claim for support or the validity of the judgment entered against him."

Mr. Justice Nix dissenting (451 Pa., at pages 64, 65; 299 A.2d at page 316), said:

"While recognizing that the 1968 Constitution intended to abolish the former system of separate courts and create a unified court of common pleas, the majority then proceeds to perpetuate one of the problems that the new system was designed to eliminate. Apparently recognizing that there is no longer a jurisdictional problem raised, the majority nevertheless devotes a substantial portion of the opinion to a consideration as to which division

would have been the most appropriate for the filing of this lawsuit. An even more serious mistake in my judgment is that it leaves open the implication that an appellate finding of an inappropriate selection of division for the initiation of an action may of itself, without a consideration of the merits, justify the vacation of the order below although admittedly the court rendering the decision had jurisdiction over the cause."

In a more recent decision where, like Posner, the proceeding was initiated after *both* the inception of the Unified Judicial System and the effective date of Pa. R.C.P. 213(f), the Supreme Court chose to follow Eberhardt, supra: Kohl v. Lentz, 454 Pa. 105, 311 A.2d 136 (1973). There, the Court of Common Pleas of Lehigh County had dismissed an equity action for lack of jurisdiction. On appeal, the Supreme Court affirmed. Mr. Chief Justice Jones, who had written the concurring opinion in Eberhardt, supra, wrote the majority opinion and said (454 Pa., at pages 108, 109; 311 A.2d, at page 137):

"We believe that the court below acted properly in the circumstances. The Orphans' Court Act of 1951, 20 P.S. § 2080.301, places exclusive jurisdiction in the Orphans' Court Division:

"The shares of stock in News Agency were in the name of the decedent at the time of his death and the ownership of such stock was exclusively a matter to be determined in the Orphans' Court Division. See Eberhardt v. Ovens, 436 Pa. 320, 259 A.2d 683 (1970): Perri v. Chiavaroli, 370 Pa. 495, 88 A.2d 798 (1952)."

Mr. Justice Pomeroy dissented and said (454 Pa., at page 112; 311 A.2d, at page 139):

"[T]here can be no question that the lower court had jurisdiction of the instant suit; the only ques-

tion is through what division of the court the jurisdiction should be exercised. If indeed the plaintiff chose the wrong division, the proper course is for the lower court to transfer the case to the correct division, not to dismiss the action, as was done here. Cf. Posner v. Sheridan, 451 Pa. 51, 299 A.2d 309 (1973); Shaffer v. Dooley, 452 Pa. 414, 308 A.2d 597 (1973)."

It may be noted that in Shaffer v. Dooley, thus cited, the transfer was not made in obedience to Pa. R.C.P. 213(f), but pursuant to Pa. R.C.P. 1509(c), which provides:

"The objection of the existence of a full, complete and adequate non-statutory remedy at law shall be raised by preliminary objection. If the objection is sustained, the court shall certify the action to the law side of the court. If not so pleaded, the objection is waived."

Mr. Justice Nix, joined by Mr. Justice Manderino, dissented in an opinion which is noteworthy because, for the first time in the four years which elapsed since Pa. R.C.P. 213(f) became effective, it contains a specific citation of that rule as answering the question: "What disposition should be made of a proceeding which has been instituted in a court lacking jurisdiction of the subject matter?" He said (454 Pa., at page 113; 311 A.2d, at page 139):

"We are of the opinion that at best this may have been an inappropriate exercise of jurisdiction. We note that even if the majority was correct in its determination that there was no jurisdiction in the court below, the result reached could have been avoided under Pa. R.C.P. 213(f)."

Attention is called to two cases, instituted in the wrong court after the inception of the Unified Judicial System and the effective date of Pa. R.C.P. 213(f), where the Supreme Court vacated the de-

crees and transferred the proceedings to the proper court, as mandated by that rule, but without any discussion or reference to it: Righter v. Righter, 442 Pa. 428, 275 A.2d 4 (1971); and Thomas v. Thomas, 442 Pa. 623, 275 A.2d 5 (1971).

Viewing the instant case in the light of the foregoing authorities, it does not appear that this court is required to make a literal application of Pa. R.C.P. 213(f) by transferring the voluminous Orphans' Court Division record to the Common Pleas Civil Division, there to mingle with the even more voluminous record compiled there, in which that court—as the one having jurisdiction of the subject matter— *already* has adequately and properly disposed of the case. It is this circumstance which distinguishes the instant case from Righter and Thomas, supra, because there, unlike here, the transfer order served the useful purpose of bringing these cases, *for the first time,* before the court having jurisdiction of the matter. On November 23, 1968, when the petition from which the instant citation to show cause is derived was filed, the Orphans' Court of Pike County had no jurisdiction to entertain it. The court then, at a time prior to the inception of the Unified Judicial System and the promulgation of Pa. R.C.P. 213(f), would have been warranted in dismissing the petition, sua sponte and without consideration of the merits: Eberhardt v. Ovens, supra; Balazick v. Dunkard-Bobtown Municipal Authority, supra, but for the circumstance that the jurisdictional question was a complicated one, not susceptible to resolution without careful analysis. Subsequently, that analysis was accomplished and the jurisdictional question was resolved by the Civil Division of the new District Court of Common Pleas in Miller v. DeSzirmay, 58 D. & C. 2d 731 (1971), and 58

D. & C. 2d 751 (1972). Since this obstacle to disposition has been removed, the court now discharges the citation to show cause and dismisses the proceedings in the Orphans' Court Division for want of jurisdiction over the subject matter, on the authority of Eberhardt v. Ovens, 436 Pa. 320, 259 A.2d 683 (1969), and Kohl v. Lentz, 454 Pa. 105, 311 A.2d 136 (1973).

## ORDER

And now, July 9, 1974, the citation, dated April 21, 1969, directing Lewis E. Miller, respondent, to show cause why the deed dated December 23, 1963, and recorded in deed book vol. 181, at page 410, should not be cancelled of record and declared null and void, is discharged and the proceedings in the Orphans' Court Division of the Pike County Branch of the Court of Common Pleas of the Forty-third Judicial District are dismissed for want of jurisdiction over the subject matter.