## Schumann Estate

Before McKenna, *P. J.*, Boyle and Rahauser, *JJ.*

*Zeno Fritz,* for former executrix.

*Lee A. Donaldson,* for successor trustee and administrator d.b.n.c.t.a.

*John Miller,* for respondent in claim by administrator d.b.n.c.t.a.

*Rocco Viola,* for claimants.

McKENNA, *P. J.,* December 18, 1975—A number of questions have been presented to us in the case. One Laura B. Bruno filed preliminary objections to a claim made by the estate against her in

the sum of $18,250. She has raised the question of the jurisdiction of this division of the Court of Common Pleas. She also questions the sufficiency of the statement of claim against her. She asserts that, on its face, the petition for recovery of funds fails to state a cause of action.

Carl D. Enzian and Anna K. Staud, also known as Anna Staud Enzian, filed preliminary objections to a petition for distribution filed by Charles W. Herald, successor trustee and administrator, d.b.n.c.t.a.* Mr. and Mrs. Enzian also raised the question of the jurisdiction of this division. They assert that the assets claimed by the estate representative were held by decedent as agent and that the Orphans' Court Division has no jurisdiction over these.

W. A. Schumann died on June 6, 1971, and on June 11th of that year letters testamentary on his estate were issued to Valerie B. Schumann. She was removed as executrix by order of this court dated October 20, 1973, for failure to file an inventory and account. On November 20, 1973, Charles W. Herald was appointed as successor trustee to W. A. Schumann, and on January 2, 1974, letters of administration, d.b.n.c.t.a. were granted to Pittsburgh National Bank. By order of court filed on January 28, 1974, the resignation of Pittsburgh National Bank was accepted and on the following January 31st Charles W. Herald was appointed as administrator, d.b.n.c.t.a.

During his lifetime, decedent was engaged in the

---

*In addition to acting as substitute fiduciary in the estate proceedings, Mr. Herald has been appointed trustee to succeed decedent in administering certain funds which decedent held in trust for others.

brokerage business. He also received funds from various depositors which he then invested in first mortgages. As the mortgages were paid off to him he remitted the principal and interest payments to the depositors. In the several years prior to his death, changes in the mortgage business affected Mr. Schumann's practice. He could no longer find high interest mortgages on the terms he required to show a profit. Nevertheless, he continued to make payments to his clients. When cash was not available on a strict accounting·basis, he simply used incoming funds to pay depositors. Eventually, this practice rendered the business insolvent. It appears that at the time of his death Mr. Schumann was indebted to various clients in the sum of approximately $3,000,000 whereas assets in his hands at that time were less than $1,000,000.

## THE CLAIM OF LAURA B. BRUNO

This demand is based on the following circumstances. Mrs. Bruno had, during Mr. Schumann's lifetime and thereafter, invested a total of $33,750 with him. All but $18,250 of this sum had been repaid to her. Prior to July 16, 1973, she continued to press the executrix for payment of the balance. When it was not forthcoming, she presented to the court her petition asking that the executrix be required to file an inventory and account. On April 2, 1973, a citation was issued on the petition against Mrs. Schumann. Before the return day, the parties agreed to a court order requiring the executrix to file an inventory and account by July 30, 1973, unless the indebtedness to Mrs. Bruno was paid in full prior to that date. The consent order was signed by Mr. Enzian, as counsel for Mrs. Schumann, the executrix, and by John A. Miller, Esq., as counsel

for Mrs. Bruno. On July 16, 1973, the executrix caused Mrs. Bruno to be paid $18,250 from estate funds. The estate now seeks to recover said sum and Mrs. Bruno has raised the two questions stated above, namely, the question of jurisdiction and that of the sufficiency of the statement of claim.

Section 3392 of the Decedents Estates and Fiduciaries Code of June 30, 1972, P. L. 508 (No. 164), 20 Pa. C.S. §3392, provides for the classification and order of payment of claims against a decedent's estate. It recites that:

"If the applicable assets of the estate are insufficient to pay all proper charges and claims in full, the personal representative, subject to any preference given by law to claims due the United States, shall pay them in the following order, without priority as between claims of the same class: . . .

"(6) All other claims, including claims by the Commonwealth."

It is clear that, in this case, Mrs. Bruno was paid with funds which belonged, at least in part, to others. She was entitled only to a pro rata share in estate funds and not to payment in full. Her counsel asks us to determine that she is entitled to retain the funds paid to her, without a hearing. We will refuse this request.

Mrs. Bruno has already conceded that this division has jurisdiction over the controversy as she petitioned this court for a citation on the executrix to file an account. Once the jurisdiction of the Orphans' Court Division has attached, it has the duty of proceeding to wind up all matters pertaining to the administration of the decedent's estate, notwithstanding that some isolated matters may be within the jurisdiction of another division. See Simmons Est., 28 D. & C. 2d 792, 798, (1962). Ac-

cordingly, this division does have jurisdiction of the cause of action.

We also find that the petition asking for a return of funds from Mrs. Bruno states a cause of action against her. Her counsel cites Fitzgerald Est., 266 Pa. 321, 109 Atl. (1920), wherein it is held that:

"A voluntary payment by an administrator to a distributee cannot be recovered back in the absence of fraud or an agreement to refund in case it should be needed to satisfy after discovered claims against the estate.": 109 Atl. at page 636.

We cannot, at this stage of the proceeding, determine that there was no fraud practiced by Mr. Enzian in arranging for the payment to Mrs. Bruno. He had been counsel for Mr. Schumann during his lifetime and he represented Mrs. Schumann during her term as executrix. It seems unlikely that he was unaware that Mr. Schumann's estate was hopelessly insolvent.

We do not now conclude that the estate is entitled to recover funds from Mrs. Bruno, but we do conclude that a cause of action has been stated and that a hearing must be held to determine the validity of the petition for return of funds.

## THE PRELIMINARY OBJECTIONS OF CARL D. ENZIAN AND ANNA K. STAUD, ALSO KNOWN AS ANNA K. STAUD ENZIAN

These were filed on November 19, 1975. They are entitled merely "Preliminary Objections." The document recites that Charles W. Herald has filed a petition for distribution wherein a question is raised as to certain assets in the estate. The issue is whether or not these funds shall be treated as a part of decedent's estate. The oral argument before the court en banc was considerably more extensive

than the narrow question stated would indicate. However, we will confine our discussion to the single question raised by the exception filed, namely, does this court have jurisdiction over administration of the assets held by Mr. Schumann at the time of his death.

In his petition for distribution filed at the audit of his account as administrator d.b.n.c.t.a., Mr. Herald raises a number of questions. One of these is: Did Mr. Schumann hold certain assets in the estate as agent for investors? Counsel for Mr. Schumann asserts that he was an agent only and that the civil division of this court has exclusive jurisdiction over claims against him by depositors. We have previously indicated that this division of the court has jurisdiction over the administration of the decedent's estate and all assets in his possession at the time of his death. We will, however, answer certain arguments made by counsel for Mr. Enzian. The attorney insists that Mr. Schumann charcterized himself as an agent. It is also true that the agreement whereby he accepted funds for deposit states that he holds same "in trust" for the depositors. The nature of the business would indicate that he was more of a trustee than an agent. If he was a trustee, this division has jurisdiction under section 711(3) of the Decedents, Estates and Fiduciaries Code, supra, 20 Pa. C. S. §711(3), which places jurisdiction over inter vivos trusts in this division. None of the exceptions recited in the section, for example, "a resulting or constructive trust," or "a principal and agent relationship" is applicable here. We need not, however, on preliminary objections determine the precise capacity in which he acted.

There are, we believe, even more cogent reasons

for holding that this court has jurisdiction. It is clear that Mr. Schumann had in his possession at the time of his death the assets involved in this litigation. There are questions as to how these shall be distributed. We may concede that there are questions concerning the ownership of certain funds. The case of Eberhardt v. Ovens, 436 Pa. 320, 259 A.2d 683 (1970), makes it clear that this division has sole jurisdiction over administration of the estate. In that case, the court said, page 322:

"Section 301 of the Orphans' Court Act of 1951, P. L. 1163, 20 P.S. §2080.301, pertinently provides: 'The orphans' court shall have exclusive jurisdiction of: . . .(13) The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee . . .' The comment to this section states that the provision is 'intended to obviate, whenever possible, a preliminary dispute as to whether the Orphans' Court has jurisdiction to determine title to the disputed property.' Since the instant case involves the question of whether Eberhardt owns part of what appeared to be the property of the decedent, Ovens, i.e., his business, the foregoing section of the Orphans' Court Act applies and exclusive jurisdiction to resolve the controversy is in the Orphans' Court."

There is still a third obvious reason why we have jurisdiction. Decedent was operating a business at the time of his death. That business, even though insolvent, passed on his death to his personal representive. No other forum exists for the administration and distribution of the assets remaining in the business.

The objections to the petition for distribution will be dismissed.