## Schoonover Estate

*John S. Halsted*, for petitioner.
*John B. Frocks*, contra.

O'DONNELL, *J.*, December 27, 1977—Cortlandt Schoonover, a resident of Westtown Township, Chester County, died on February 25, 1976, at the age of 62, leaving a will, duly admitted to probate, which provided for payment of debts, taxes and expenses and for the residue to go to his wife, Naomi, or in the event of her predecease to decedent's stepson, or in the event of his predecease to decedent's brother-in-law. The name of decedent's son, John Schoonover, is conspicious by its absence in the will.

The estate has been advertised and an inventory

and appraisement showing a gross estate in the sum of $34,584.25 has been filed with the other necessary papers. No account has yet been filed nor, of course, has the estate been called for audit.

The son, John, has filed a petition for citation seeking possession of certain items in the hands of the personal representative found among decedent's possessions at the time of his death. In effect, John seeks a decree adjudicating title to these items to be in him. A brief reference to those items is in order.

Cortlandt Schoonover was the son of the late Frank Schoonover, 1877-1972, a distinguished Chester Countian, an eminent artist and illustrator, and an associate and colleague of N. C. Wyeth, a fellow disciple of the late Howard Pyle at Chadds Ford. The items here concerned are certain photographic plates, lantern slides and similar materials used by Frank Schoonover in his work and thusly having a sentimental and historical value beyond the $900 valuation given in the appraisement. These items, in turn, were used by decedent here, Cortlandt Schoonover, in his splendid, definitive book on his father's work, a labor of many, many years. The work is entitled simply, "Frank Schoonover."

Some comment about the procedure employed is necessary. Since decedent was in possession of this personalty at the time of his death, and since it is now in the hands of the personal representative, the orphans' court has exclusive jurisdiction: Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §711(17); Eberhardt v. Ovens, 436 Pa. 320, 259 A. 2d 683 (1969). In the exercise of this jurisdiction, however: "The orphans' court is a court of limited jurisdiction, the extent of which is

determinated entirely by statute." Mains's Estate, 322 Pa. 243, 185 Atl. 222 (1936), and the court has only those powers and such as are necessarily incidental thereto: Potteiger v. Fidelity-Philadelphia Trust Co., 424 Pa. 418, 227 A. 2d 864 (1967); Probate, Estates and Fiduciaries Code, supra, §715.

Formerly, disputed claims of title could be raised only upon audit of the account: Higbee v. Koziol, 383 Pa. 116, 117 A. 2d 707 (1955); but

"'In the settlement of a decedent's estate disputed title to property should not be determined upon exceptions to an inventory and appraisement which happens not to include the property claimed on behalf of the estate. The function and object of an inventory and appraisement in a decedent's estate is to fix presumptively the existence of property in the possession of the fiduciary and the value thereof. This is only prima facie evidence of ownership and value. Such listing does not affect the true ownership and value: [authorities cited]. The question of ownership is of interest to creditors, federal and state taxing authorities, and others. Such title, therefore, should not be finally determined until after an audit, with due statutory notice . . . Nonetheless, the proper procedure is as we have hereinabove indicated and is, therefore, to be followed.' [Rogers Estate, 379 Pa. 494, 495, 496, 108 A. 2d 924 (1954)] . . . However, by an amendment to the Fiduciaries Act of 1949,[1] supra., the teaching of Rogers and Higbee was nullified. 'Objections to the inventory may be made by any party in interest at any time up to . . . audit.'" Donsavage Estate, 420 Pa. 587, 218 A. 2d 112 (1966).

---

1. Present section 3305 of the Probate, Estates and Fiduciaries Code.

But even with this change, the function and object of the inventory is still only to fix the title *presumptively* and it continues to be still only *prima facie* evidence of ownership: Nunnamaker Estate, 452 Pa. 467, 308 A. 2d 96 (1973); and, to underscore the point, an order entered on objections to an account is only interlocutory and unappealable: Nunnamaker, supra; Strunk Estate, 453 Pa. 19, 307 A. 2d 839 (1973).

It must, however, be noted that all of the foregoing cases, as well as others of this progeny involve objections where the objectant was attempting to put something into the inventory, not take it out, as is the case here. It is clear that petitioner here seeks real title, not presumptive or prima facie title. It is equally clear that once possession of an estate asset is gained by a claimant having no fiduciary responsibility with respect to it the adjudication of title is final whether that was the court's intent or not. Of equal importance is the fact that, if courts were upon objections to inventory to authorize the withdrawal of assets from inventory, the estate could very well be diminished below an aggregate of assets available for the taxing authorities and creditors; the amount available for distribution to beneficiaries would always be reduced and these events would occur before the legal notice required for an audit, thusly without due process to those whose interests would be affected.

It becomes apparent then that this action is premature and ought to be deferred until the audit. But because the writer of this opinion, who was the judge who saw and heard the witnesses in this case, will no longer be serving on the bench at audit time, and because, by virtue of the disposition we

make of this case creditors' and claimants' rights will not be affected, we will treat this case as if on objections to the account and proceeds to the merits.

The only evidence produced in support of the claim consisted of five letters written by decedent to claimant as well as some oral testimony. The claimant points to these letters as evidence of his ownership. We find them to be exactly the opposite. The material parts of these letters are:

"July 19, 1974

"Sometime after your grandfather, Frank E. Schoonover's death . . . I told you . . . *none of the items [the disputed personalty] of his that you were using or storing at your home or other location was yours.* I offered to give you all grandfather Schoonover's photographic *negatives.* In return you agreed to give me all of his papers that you still have." (Emphasis supplied.)

"September 18, 1974

"This letter is written to acknowledge receipt as of this date return of the loan of the following: (two boxes) containing plates, photographs, negatives . . . appreciate your promptness and your promise to deliver the balance of what was on loan."

"October 6, 1974

"This letter is written to acknowledge return of the loan . . . (I) know that you will hold to your promise to deliver . . . (the) balance."

"October 12, 1974

"This letter . . . receipt . . . of the loan of the following:

"One small . . . oil painting on board.

"One framed photograph

"One grouping of about 25 . . . photographs.
I appreciate your doing this and know that you will hold to your promise to deliver whatever balance may turn up."

"November 11, 1974
"This letter . . . receipt . . . 2 boxes of miscellaneous photographic materials loaned to you."

Beyond that, claimant testified to a conversation he had with his stepmother, the personal representative, during the course of the administration in which he asked her for these articles. Her response, at the time, was that she did not anticipate a problem unless the claimant's aunt, Mrs. Cobb, had an objection. At very best this is an "I'll think about it" answer—far less than an acknowledgment of his title or enforceable promise. Finally, claimant himself attempted to testify that the articles in question were once in his possession. Upon objection based upon the Dead Man's Rule, the objection was properly sustained. But even if admitted, that testimony would go no farther than the others had gone. Surely the claimant was once in possession of the goods. The only evidence in the case is that those items were lent to him and ultimately returned to his father.

## ORDER

And now, December 27, 1977, the petition of John R. Schoonover is dismissed.