965 A.2d 251 (2009)
In re I.L.P. and I.L.P. Joint Petition on Assisted Conception Birth Registration.
Appeal of C.-H.L. and T.J.P., G.S. and B.S.
No. 786 WDA 2008.
Superior Court of Pennsylvania.
Argued September 24, 2008.
Filed January 21, 2009.
Hilary A. Kinal, Ambridge, for B.S. and G.S., appellants.
BEFORE: KLEIN, POPOVICH, and *252 FITZGERALD[*], JJ.
OPINION BY POPOVICH, J.:
¶ 1 Appellants, gestational carrier (G.S., along with her husband, B.S.) and birth parent (C.-H.L., along with his life partner, T.J.P.) of twins (I.L.P. and I.L.P.),[1] appeal the Decree of the Court of Common Pleas of Allegheny County, Orphans' Court Division, entered on April 2, 2008, denying Appellants' petition requesting correction of the birth registration of the twins. We reverse.
¶ 2 The procedural history of this case was recited by the trial court as follows:
On July 28, 2006, after consideration of [Appellants'] Joint Petition ("2006 Petition"), th[e Orphans'] Court issued a Decree ("Decree") determining that [Appellant] C[.]-H[.]L[.] ("L[.]") was the father and sole parent [n. 1] of the unborn twin Children ("Children") in this matter. The Decree directed that any certified copies of Children's birth records reflect [Appellant/C.H.]L[.]'s parentage. The Children were born five weeks later on September 7, 2006.
[n. 1] The eggs were from an anonymous donor. [Appellant] G[.]S[.] ("Gestational Carrier") had agreed to carry embryos in her womb, provide them with nutrition during pregnancy, and deliver Children upon birth.
It is important to understand that there is no statute or regulation regarding gestational carriers[, of which Appellant G.S. was in this case for the birth parent/Appellant C.-H.L]. Th[e Orphans'] Court's only direction in gestational carrier matters is an October 2, 2003 Pennsylvania Department of Health Letter ("Letter") that sets forth the policy and procedures of that department for the registration of an assisted conception birth. The Letter acknowledges what th[e Orphans'] Court is well aware of: that "the Vital Statistics law and associated regulations do not specifically address assisted conception." In other words, the law has not yet caught up with the science that makes conception by in vitro fertilization [ ... ] using a gestational carrier possible. The Letter provides a mechanism to ensure a child born of a gestational carrier has a genetic parent's name on a birth record.
On April 2, 2008, [Appellants] presented a Joint Petition for Amended Decree ("2008"). They averred that [Appellant C.H.]L[.], a Taiwanese citizen, wanted the children to be joint U.S.-Taiwanese citizens. [Appellants] state that because Children are the product of a Taiwanese citizen and a woman married to someone else, Taiwanese authorities would not grant citizenship unless [Appellant] Gestational Carrier voluntarily requests that the [Orphans'] Court terminate her parental rights, and that her husband, [Appellant] B[.]S[.] ("Gestational Carrier's Husband"), disavow he is the biological father and also requests termination of his parental rights. Th[e Orphans'] Court denied the 2008 Petition, stating that sufficient information regarding this matter was contained in the original 2006 Petition and Decree which followed[...].
Orphans' Court Opinion, 5/28/08, at 1-2 n. 1. Thereafter, Appellants filed a timely notice of appeal on May 2, 2008, which was followed by compliance with the Orphans' Court's May 6, 2008, Pa.R.A.P.1925(b) order raising the issue: Did the Orphans' Court err in denying Appellants "request *253 [for] a restatement of the situation created by their successful petition to correct birth registration, to satisfy the specific language which is required by the Government of Taiwan to recognize [Appellant C.-H.L.'s] rights[, ... and] make a determination that the [gestational] carrier and her husband have no rights to the children."[2]See Appellants' "Concise Statement of Matters Appealed," 5/21/08; Record No. 5.
¶ 3 All parties concede this is an "unusual case" and is without precedent in this jurisdiction. Appellant G.S. (with the consent of her husband, Appellant B.S.) agreed to serve as the gestational carrier for a baby to be conceived using an anonymous donor egg and the sperm of Appellant C.H.L., who is the registered domestic partner under New Jersey law of Appellant T.J.P. The in vitro fertilization was successful and resulted in the birth of twin girls, who are now approximately two years old.
¶ 4 After conception of the twins, a joint petition was filed with the Orphans' Court of Allegheny County to correct the birth records pursuant to 20 Pa.C.S.A. § 711(9). The Orphans' Court signed an order to have the birth certificates of the twins reflect their parentage; to-wit:
AND NOW, this 28th day of July, 2006, upon consideration of the foregoing Petition, Amended Petition, and the Affidavits, Acknowledgements and Stipulation attached thereto, it is the determination of this Court that [Appellant C.-H.L.] is the father and sole parent of the twin children anticipated to be born [... ] through [Appellant G.S.,] acting as embryo carrier for [Appellant C.-H.L.]
It is hereby Ordered and Decreed that any certified copies of the birth records of said children shall reflect the sole parentage of [Appellant C.-H.L.] whenever parentage appears on such documents. [...].
Decree, 7/28/06, Volume 1151, Page 13. Of primary consequence to Appellants' appeal is the failure of the Orphans' Court to make any mention of the gestational carrier in the above-stated order of July 28, 2006, which absence is an impediment to the twins obtaining dual (Taiwanese/American) citizenship[3] without clarification to *254 the satisfaction of the Taiwanese government that the (parental) rights of the gestational carrier and her husband have been terminated by the Court of Common Pleas of Allegheny County, Orphans' Court Division.[4] As a result, on April 2, 2008, Appellants filed a joint petition seeking to have the Orphans' Court amend its July 28, 2006, decree to indicate that the gestational carrier and her husband had waived and/or terminated "any claim" to the children. The Orphans' Court had reservations in issuing an amended order terminating the parental rights of Appellants G.S. and B.S. to placate the Taiwanese Ministry of Justice's interpretation of its civil law regarding parental rights to children born out of wedlock: Birthing rights *255 of gestational carrier and, if married, her husband needed to be terminated by court order in advance of natural father/Appellant C.-H.L. securing Taiwanese citizenship for children born out of wedlock. See note 4, supra.
¶ 5 We agree with the Orphans' Court that in this Commonwealth there is no law that accords standing to a surrogate with no biological connection to the child. See J.F. v. D.B., 897 A.2d 1261 (Pa.Super.2006), appeal denied, 589 Pa. 739, 909 A.2d 1290 (2006) (gestational carrier filed petition seeking termination of parental rights of natural father of triplets, which trial court granted; this Court reversed on grounds that gestational carrier lacked standing to terminate parental rights of natural father; currently no legislation exists conferring standing on a gestational carrier). However, our inquiry is not at an end because the gestational carrier and her husband have no standing to seek custodial rights of children born to the surrogate. Rather, it must be remembered that the 2008 petition seeking amendment of the 2006 decree was the joint effort of Appellants G.S. and B.S., as well as the birth father, Appellant C.-H.L. Albeit we may not dispute the Orphans' Court's determination that Appellants G.S. and B.S. have no parental rights recognized in this Commonwealth, see J.F., supra, the same result does not obtain with regard to the natural father, Appellant C.-H.L., whose 2006 and 2008 petitions sought "to correct birth registration." See note 2, supra.
¶ 6 To explicate, jurisdiction in the Orphans' Court Division is exclusively a matter of statute. In re Shahan, 429 Pa.Super. 91, 631 A.2d 1298, 1301 (1993), appeal denied, 537 Pa. 666, 644 A.2d 1202 (1994); Hughes v. Bailey, 202 Pa.Super. 263, 195 A.2d 281, 283 (1963). 20 Pa.C.S.A. § 711 requires the Orphans' Court Division to exercise mandatory jurisdiction in one pertinent situation; to-wit:
Except as provided in section 712 (relating to nonmandatory exercise of jurisdiction through the orphans' court division) and section 713 (relating to special provisions for Philadelphia County), the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:

* * * *
(9) Birth records. Except as provided in section 713 of this code, all proceeds which may be necessary to be presented to a court for determination with regard to issues concerning recordation of birth and birth records or the alteration, amendment or modification of such birth records or the right to obtain certified copy of the same. Whenever a person is entitled to take an appeal from the action of the Department of Health in connection with any matters concerning birth records the appeal shall be taken to the orphans' court division of the county in which the person is a resident. In all other matters in which a petition is addressed to a court in connection with matters of birth records, the filing of which petition is not in the nature of an appeal but is an original proceeding, shall be filed and determined by the orphans' court division of the county in which the petitioner resides.

20 Pa.C.S.A. § 711(9) (Supp.2008) (emphasis added). Additionally, Section 712, which is specifically referenced in § 711, provides in pertinent part:
The jurisdiction of the court of common pleas over the following may be exercised through [ ... ] its orphans' court division [...]:

*256 * * * *
The disposition of any case where there are substantial questions concerning matters enumerated in section 711 and also matters not enumerated in that section.
20 Pa.C.S.A. § 712(3). Further, it cannot be gainsaid that under 42 Pa.C.S.A. § 931 the courts of common pleas have "unlimited original jurisdiction of all actions and proceedings" brought before it pursuant to statutory authority. In re Terwilliger, 304 Pa.Super. 553, 450 A.2d 1376, 1379 (1982). Lastly, under 42 Pa.C.S.A. § 323, captioned "Powers," and dealing with the general structure and authority of the courts of this Commonwealth, it is set forth that:
Every court shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction, and, except as otherwise prescribed by general rules, every court shall have power to make such rules and orders of court as the interest of justice or the business of the court may require. [emphasis added]
Based on the preceding, first, we hold that jurisdiction to entertain Appellants' 2006 and 2008 petitions (seeking alteration, amendment or modification of birth records) was properly before the Orphans' Court of the Court of Common Pleas of Allegheny County. Swartzwelder v. Edmonds, 17 Pa.Cmwlth. 158, 331 A.2d 224, 225 (1975) ("Section 711 of the Probate, Estates and Fiduciaries Code affords a person alternative procedures to seek the alteration, amendment or modification of a birth certificate in proceedings before the orphans' court division of the appropriate court of common pleas."). Second, it appears that neither by statute nor case law has the jurisdiction granted to the courts of common pleas, in particular the orphans' court division, been circumscribed to foreclose consideration of a petition seeking clarification of birth records, which is the essence of Appellants' request at bar.
¶ 7 "It is well-established that orderly judicial procedure dictates that the court which first acquires jurisdiction over a matter be permitted to decide all questions relating thereto." Tallarico v. Bellotti, 414 Pa. 535, 539, 200 A.2d 763, 765 (1964) (quoting Binenstock's Trust, 410 Pa. 425, 430, 190 A.2d 288, 291 (1963)). The aforesaid translates into the Orphans' Court acquiring jurisdiction over the case once Appellants filed their 2006 petition seeking inclusion of parental information in the children's birth certificates, and all matters pertaining thereto, which entails Appellants' 2008 petition seeking clarification of the non-parental rights of Appellant G.S. and her husband, Appellant B.S. See Pope v. Dascher, 429 Pa. 576, 583, 240 A.2d 518, 522 (1968) ("For the purpose of the limited issue before us, the Orphans' Court of Washington County, first acquired jurisdiction over decedent's assets, and all matters pertaining thereto should be directed to its attention."); Appeal of The Odd Fellows Savings Bank, 123 Pa. 356, 365, 16 A. 606 (1889) ("[Once] equitable jurisdiction [of the Orphans' Court ... ] attached, it was sufficient to embrace every relief necessary for a full disposition of the case[.]" (citation omitted)); In re Shahan, 631 A.2d at 1302 ("[E]ven if [administrator's] role as attorney-in-fact is somehow distinct from his role as [decedent's] personal representative, the Orphans' Court may exercise non-mandatory jurisdiction over `[t]he disposition of any case where there are substantial questions concerning matters enumerated in section 711 [...,]' 20 Pa.C.S.A. § 712(3). [Administrator's] role as attorney-in-fact is so intertwined with his role *257 as fiduciary to [decedent's] estate [ ... ] that his acts as fiduciary raise `substantial questions' necessary to resolve this lawsuit, rendering jurisdiction proper in any event."); In re Gibson's Estate, 153 Pa.Super. 413, 34 A.2d 159, 161 (1943) ("The orphan's court within its jurisdiction is a court of equity, and has full power as a chancellor to grant relief; and being a court of equity it is guided by the principles of equity, although its jurisdiction is special and derived entirely from statute."); Estate of Harriet B. Laverelle, 101 Pa.Super. 448, 450-51 (1931) ("[R]especting the jurisdiction of the orphans' court, [... ] legislation and the numerous decisions thereafter definitely determined that the orphans' court is essentially a court of chancery, and when the jurisdiction once rightfully attaches, it is effective for all purposes incident to the proceeding before it. As was said in McGowin v. Remington, 12 Pa. 56[, 63 (1849) ], `When once a court of equity takes cognizance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute.' In Black's Exrs. v. Black's Exrs., 34 Pa. 354, [357 (1859)], Mr. Justice Thompson, in discussing the powers of the orphans' court, said, `It is possessed of chancery [... ] practice to make all such decrees, interlocutory and final, as may be necessary, in the administration of its appropriate duties, subject to review, on appeal to this court.'").
¶ 8 With the aforementioned precepts as guideposts, we observe that, on the 28th day of July, 2006, Appellants filed a joint petition seeking to have Appellants C.-H.L. and T.J.P. declared the parents of twin children to be born by a gestational carrier, Appellant G.S., and that the birth certificates reflect such parentage. In the alternative, Appellants prayed that: (1) the Orphans' Court enter a decree acknowledging that Appellant C.-H.L. was the sole parent of the children; (2) Appellant G.S. was not a parent of the children; and (3) the birth certificates to be issued by the Pennsylvania Department of Health reflect the parentage of said children to be Appellants C.-H.L. and T.J.P. See Appellants' "JOINT PETITION," 7/28/06, Vol. 1151, Pages 9, 12; Record No. 1.
¶ 9 Further, the parties and the Pennsylvania Department of Health stipulated to a proposed decree listing Appellants C.-H.L. and T.J.P. as the parents of the twin children. The Pennsylvania Department of Health also stood neutral on and had no objection to the Orphans' Court determining that Appellant C.-H.L. appear as the sole parent on the children's birth records. See Appellants' "STIPULATION" attached to "JOINT PETITION," 7/28/06, Volume 1151, Page 8; Record No. 1. Forthwith, the Orphans' Court entered a decree dated July 28, 2006, determining that Appellant C.H.L. was the father and sole parent of the twin children anticipated to be born on or about October 2, 2006, at Allegheny General Hospital through Appellant G.S., acting as embryo carrier for Appellant C.-H.L.
¶ 10 Nonetheless, despite the production of the July 28, 2006, decree, Appellants' efforts to obtain Taiwan citizenship for the twins was withheld until Appellants secured "court recogni[tion of] a denial of a connection of the children to the wedlock of [Appellant G.S.] and her husband[, Appellant B.S.]" See Letter dated June 29, 2007, from Taiwan Ministry of Justice, ¶ 2, attached to Appellants' brief, at Appendix C. Toward that end, Appellants submitted a joint petition averring, as herein relevant:
4. When the children are the product of a Taiwanese father and a woman married to someone else, different procedures *258 apply [to secure Taiwan citizenship...].
5. In th[e situation discussed in Paragraph 4, supra,] the Taiwanese authorities require that the mother voluntarily request that the appropriate legal authorities terminate her parental rights, and that the mother's husband acknowledge that he is not the biological father, and also request that his parental rights be terminated.
6. Although [Appellants G.S. and B.S.] have made these requests and acknowledgment in the Joint Petition and their Parental Acknowledgements under Docket No. 02-06-04655, the Taiwanese do not feel as comfortable as they would like to feel that the court has decreed on these specific matters. The current language of the [2006] decree is economical. When translated into Chinese, it does not provide the markers that the Taiwanese authorities would normally use to decide that their requirements have been fulfilled [for citizenship of children born out of wedlock].
7. Therefore, [Appellants C.-H.L. and T.J.P.], respectively request that the [2006] decree be amended to be more explicit by having the attached [2008] Amended Decree signed [by the Orphans' Court].
Appellants' "Joint Petition for Amended Decree," 4/2/08, ¶¶ 4-7, Vol. 1151, Page 14A; Record No. 2. By order dated April 2, 2008, Appellants' petition was denied by the Orphans' Court on the basis that, "sufficient information regarding this matter is in the original petition and decree [of 2006]." See Orphans' Court Opinion, 5/28/08, at 3 ("Simply put, [Appellants] [g]estational [c]arrier and [g]estational [c]arrier's [h]usband had no parental rights for this Court to terminate."). Albeit we agree with some of the observations made by the Orphans' Court, we do not join in the result reached by the esteemed jurist in this case.
¶ 11 Herein, with the filing of Appellants' 2006 and 2008 petitions, the Orphans' Court's jurisdiction was triggered along with the equitable powers to alter, amend, and modify the children's birth records, as well as any matters attendant thereto. See Pope; Tallarico; Appeal of The Odd Fellows Savings Bank; In re Shahan; and Estate of Laverelle, supra; see also Section 711; Section 712(3); and Section 931, supra. This encompasses the Orphans' Court's jurisdiction to issue an amended decree clarifying that the gestational carrier and her husband had no parental rights ("no connection") recognizable in this Commonwealth to the twins. See id; note 4, supra; see also Petition to Amend Birth Record of S.Z., 5 Pa. D. & C.2d 786, 789 (1956) (Mother of child born out of wedlock filed petition to correct child's birth record, which was based upon fictitious information; under the circumstances (child's parents married and had second child), Orphans' Court granted petition "as no objection ha[d] been voiced by anyone who might have any interest in the proceedings.").
¶ 12 To summarize, we hold that the trial court abused its discretion in denying Appellants' 2008 petition seeking to clarify their parental status in respect to the minor children. Contrast J.F. v. D.B., 941 A.2d 718 (Pa.Super.2008) (trial court's denial of natural father's effort to obtain reimbursement of child support paid to gestational carrier was not an abuse of discretion). To remedy the matter, we shall remand this case with a strong recommendation that the Orphans' Court reconsider its ruling given our conclusion that it does have the authority to modify the decree appealed by Appellants.
*259 ¶ 13 Decree reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.
NOTES
[*] Former Justice specially assigned to Superior Court.
[1] Because of the sensitive nature of this case, we have resorted to the use of initials to protect the identity of the parties.
[2] The original issue filed by Appellants in reply to the Orphans' Court's Pa.R.A.P. 1925(b) order states in toto:

CONCISE STATEMENT OF MATTERS APPEALED
Pursuant to th[e Orphans' C]ourt's Order of May 6, 2008, Petitioners-Appellants present the following concise statement of the matters complained[-]of in their appeal:
Petitioners[-Appellants] requested a re-statement of the situation created by their successful petition to correct birth registration, to satisfy the specific language which is required by the Government of Taiwan to recognize their rights. Pennsylvania, pursuant to most recent caselaw, sees the rights of gestational carriers as being non-existent. However, in Pennsylvania an order is necessary to confirm that the gestational carrier is not the birth parent, so that [the Orphans' C]ourt still has to make a determination that carrier and her husband have no rights to the child. Petitioners [-Appellants] request for a clarification order is far less burdensome than attempting to secure legal briefs that would convince the Government of Taiwan that what occurred in the Pennsylvania court is in essence the same [as] their [Government of Taiwan's] idea of relinquishment, given the difference in legal concepts and language involved.
See Appellants' "Concise Statement of Matters Appealed," 5/21/08; Record No. 5. We have re-drafted Appellants' issue on appeal for ease of discussion.
[3] Appellant C.-H.L. is a citizen of Taiwan and would like the twins to also be citizens of Taiwan. Among the benefits of dual citizenship to Appellant C.H.L.'s children would be national health insurance coverage when they are visiting Taiwan, which Appellant C.-H.L. expects the children to do most summers, and work permission, resulting in enhanced career options later in life. See Appellants' "Joint Petition for Amended Decree," 4/2/08, ¶ 2; Record No. 2.
[4] The letter issued by the Taiwan Ministry of Justice on this topic states as follows:

Subject: In regard to [Appellant] Mr. [C.-H.L.]'s claim to the twin girls, who were born through assisted conception by [Appellant] Mr. [C.-H.L.] and an American, [Appellant] Mrs. [G.S.], using an anonymous egg donor. Please refer to explanations number two and three for our opinions.
Explanation:
1. In reply to your request letter number XXXXXXXXXX dated 2007/05/21.
2. According to civil law concerning foreign affairs number 17, "The law which applies to claims of children born out of wedlock is the law of the country of the claimant's nationality (section 1). The effect of a claim is based on the law of the country of the claimant's nationality (section 2)." The next applicable law is civil law number 1065 section 1: "After the biological father's claim of the children born out of wedlock, the children are treated as children born in wedlock. If the children were raised by the biological father, it is treated as a claim by the biological father." The relationship between the children born out of wedlock and the birth mother and father is premised in accordance with the biological relationship. The biological father needs to claim, or to obtain a court decree, in order to have legal rights to the children born out of wedlock. The fact that the mother gave birth to the children is legally sufficient to have parental rights. It is not necessary for the mother to claim or to obtain a court decree. According to the description in the letter, the case is about the twin girls who were born through assisted conception by a Taiwanese citizen, [Appellant] Mr. [C.H.L.], and an American, [Appellant] Mrs. [G.S.], using an anonymous egg donor. In other words, [Appellant] Mrs. [G.S.] was acting as a gestational carrier, and the eggs were not [Appellant] Mrs. [G.S.]'s eggs. In our opinion, the woman who gave birth to the children is the mother, and therefore, [Appellant] Mrs. [G.S.] will be the birth mother to the twin girls in this case. As to whether [Appellant] Mr. [C.-H.L.] could claim to the [sic] twin girls to which [Appellant] Mrs. [G.S.] gave birth, it will depend on [Appellant] Mrs. [G.S.]'s marital status. To specify, if [Appellant] Mrs. [G.S.]'s status is single without marital relationship, [Appellant] Mr. [C.-H.L.] could claim the twin girls to which [Appellant] Mrs. [G.S.] gave birth. If [Appellant] Mrs. [G.S.]'s status is married, according to Taiwan's civil law number 1063, the twin girls to which [Appellant] Mrs. [G.S.] gave birth are treated as the children born in [Appellant] Mrs. [G.S.] and her husband's wedlock. Under this situation, [Appellant] Mrs. [G.S.], her husband, or the twin girls should petition that the court recognize a denial of a connection of the children to the wedlock of [Appellant] Mrs. [G.S.] and her husband. After the court ruled on the petition for a denial of a connection of the children to the wedlock of [Appellant] Mrs. [G.S.] and her husband, [Appellant] [C.-H.L.] could claim them.
3. In this case, Taiwanese citizen [Appellant] Mr. [C.-H.L.] intends to claim the children born out of wedlock who are American citizens. He needs to follow both civil laws in Taiwan and America (regulations are different between each state) and to fulfill both requirements. The household registration office should obtain valid documents from [Appellant] Mr. [C.-H.L.] that conform to applicable laws of Taiwan and America.
See Appendix C attached to Appellants' brief, at 18 (unnumbered) (emphasis added).