J-A20039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF PETITION TO AMEND BIRTH RECORD OF JERMANE WRIGHT | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JERMANE CRYSTAL LYNN WRIGHT | : : : : : | |
| | : | No. 339 WDA 2021 |

Appeal from the Order Entered February 16, 2021
In the Court of Common Pleas of Lawrence County Civil Division at
No(s):  2017-70126, M.D.

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                 **FILED: OCTOBER 12, 2021**

Appellant Jermane Crystal Lynn Wright ("Wright") appeals from the order entered in the Lawrence County Court of Common Pleas denying her petition to correct her birth record, or birth certificate.  There is no appellee.[1]  The question presented is one of jurisdiction, purely – did the trial court err in concluding that the requested relief was beyond its power to grant?  We reverse.

Wright phrases the questions presented as follows:

> 1.      Procedurally, did the trial court [err] and abuse its discretion by denying [Wright's] request to "amend the surname recorded on her Certification of Birth", without any substantive legal rationale, without hearing, summarily denying [Wright's] Motion for Reconsideration the day after it was filed, and strangely mischaracterizing [her] "Petition to Further Correct a Birth Record – Uncontested" [or Petition] of February 10, 2021 as an untimely

_____

[1] The Department of Health has not taken a position on this litigation.

Petition to Amend the Court's Order of April 5, 2018, when the subject Petition was obviously, clearly, on its face, not requesting to amend the court's prior 2018 order?

2. Did the trial court [err] and abuse its discretion by denying [Wright's] request to "amend the surname recorded on her Certification of Birth" stating that such a request is "beyond the authority of this Court" in response to [Wright's Petition] when the authority of the court to make this correction was provided in the subject Petition, provided in the court's own order, and further detailed in [Wright's] "Motion for Reconsideration" that was timely filed in response to this order?

3. Did the trial court [err] and abuse its discretion by denying [Wright's] request to amend and correct her name on her certificate of birth to[ ] "Jermane Crystal Lynn Lo Voi" when the legislatively delegated keeper of the subject birth record, the Pennsylvania Department of Health, Vital Records Division, thoroughly reviewed her Petition in advance, reviewed this proposed amendment and correction, and stated in an official letter through their legal counsel [ ] that they have no objection to her request and amendment?

4. Did the trial court [err] and abuse its discretion by denying [Wright's] request to "amend the surname recorded on her Certification of Birth" considering this same trial court and trial judge decreed in 2018 that "Joseph William Lo Voi" was her biological father and that he should be listed on her birth certificate as such; considering that her mother signed an affidavit in the presence of a notary stating that [Wright's] surname on her birth record should have been "Lo Voi"; considering the deep personal meaning and significance of correcting her birth surname; considering the practical significance of the surname in Italian culture; considering birth record surnames frequently being changed and corrected in Adoption cases; and considering all the other reasons identified in the [Petition] and the "Motion for Reconsideration", filed of record?

Wright's Brief at 9-11.

Wright, who is multiracial and whose mother is African-American, used a consumer DNA service and online tools to discover the identity of her father,

Joseph William Lo Voi. She then contacted her half-siblings, but not without apprehension, as she did not know how they would react to having a multiracial sibling and to the news that their father had an extramarital encounter with her mother.[2] She knew from her online research that her father's marriage had produced children both older and younger than her, so she feared that the news of her identity might be unwelcome, as it might destabilize the family's identity. Her fears were dispelled by her siblings' joy at the happy news that their family was larger than they had known, and since then she has developed a rewarding relationship with them.

On November 27, 2017, Wright filed an initial, counseled petition to amend her birth record. However, her counsel advised her that it would be cheaper for her to present her case by herself, apparently advising her that it was a "slam dunk" and therefore she would not necessarily need counsel at the hearing. N.T. Hearing, 1/24/18, at 6. Here is the trial court's recitation of the relevant facts:

> In paragraph 3 of [Wright's 2017] Petition, the Petition stated that [Wright] was seeking to amend her birth certificate for the following reasons:
>
>> a. Petitioner's birth record does not state any father listed (it is blank for "Father").
>>
>> b. Petitioner did not know her biological father in her youth.

---

[2] N.T. Hearing, 3/27/18, at 40.

> c. After an extensive search, Petitioner discovered that her biological father is Joseph William Lovoi . . . ."

The relief requested was, "to enter an order decreeing that the Petitioner's birth record be amended to indicate that her biological father was Joseph William Lovoi." After changing attorneys, a Supplement to Petition to Amend Birth Record was filed on March 27, 2018. The aforelisted reasons for the requested change and the relief requested were not changed.

On March [27], 2018, a hearing was held and testimony received. The Court transcript of the testimony was filed on April 30, 2018. An Order was entered on March 28, 2018 granting the relief requested and ordering that the Petitioner's birth certificate be changed and that Joseph William Lovo [sic] be inserted as the Petitioner's biological father. Because the March 28, 2018 Order listed the father's last name as "Lovi" instead of "Lovoi," an April 5, 2018 Order was entered correcting the spelling of the biological father's name to the requested "Joseph William Lovoi."

Nothing further happened until almost three years later, when on February 10, 2021 a "Petition to Further Correct Birth Record – Uncontested" was filed. In this new Petition, it was alleged that if the Petitioner's mother had known the identity of the child's father, she would have named the Petitioner "Jermaine Chrystal Lyynn Lo Voi" instead of "Jermaine Chrystal Lyynn Jones." The Petition also stated that the correct last name of the father should have been "Lo Voi" not "Lovoi" as originally listed in the initial petition and supplemental petition. The Petition to Further Correct Birth Record requested that the Father's last name be corrected to "Lo Voi" and that the Petitioner's last name at birth be changed from "Jones" to "Lo Voi."

. . . However, the request to change the Petitioner's name at birth could not be treated as a mere technical correction; and the request to modify the Petitioner's name at birth was denied.

Neither the original Petition to Amend Birth Record or the 2018 Supplement to Amend Birth Record contained any allegation that the Petitioner's Mother would have named the Petitioner differently if the Mother had known the Father of her child. And neither the original Petition or the 2018 Supplement made any request for relief asking the Court to amend the birth certificate

to change the Petitioner's name at birth. The testimony that was placed on the record on March 28, 2018 contained no testimony about changing the Petitioner's birth name. While a technical error can be corrected at any time, an Order becomes final and non-appealable after thirty (30) days, 42 Pa.C.S.[ ]§ 5505. A Court retains inherent authority to correct technical errors in the record, but no [substantive] change can be made after an Order becomes final . . . .

Trial Ct. Op., 5/6/21, at 1-3.

Wright argues that the trial court has mischaracterized her petition of February 10, 2021 (the 2021 Petition) as an untimely petition to amend the court order of April 5, 2018, instead of viewing it as a distinct and subsequent petition. Wright's Brief at 29. Wright points out that the Department of Health, Vital Records Division, "thoroughly reviewed her [2021] Petition in advance, reviewed this proposed amendment and correction, and stated in an official letter through their legal counsel . . . that they have no objection to her request and amendment." *Id.* at 30.

In an appeal from an Orphans' Court decree,

[we] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Brown*, 30 A.3d 1200, 1206 (Pa. Super. 2011) (citation omitted).

Here, the dispute lies in the legal conclusions reached by the trial court. The central question is whether an individual can bring multiple petitions to correct a birth record, or whether all potential corrections must be brought in the same proceeding at the risk of loss of jurisdiction. The trial court supports its denial of relief by pointing out that the request to change Wright's birth name was not presented in Wright's original or amended petition, nor was it raised at the hearing of March 27, 2018. Trial Ct. Op. at 5. "Not directly stated by the trial court, but almost implied in its opinion, is that [a petitioner] only gets one opportunity to amend her Birth Record." Wright's Brief at 35. Wright asserts that there is no authority for this implication. *Id.* Wright also points out that the 2021 Petition requested other relief that the trial court granted. *Id.* at 36. The trial court acknowledges in its opinion that it corrected the spelling of Wright's father's last name. Trial Ct. Op. at 2.

We must agree with Wright that there is no authority for the supposition that petitioners may only seek to amend a record of birth once; nor is there authority for the position that there is a time bar and petitioners must seek amendment promptly upon encountering facts that would support amendment of a record of birth. Our review of 35 P.S. § 491 (governing ability to petition for amendment of a birth record and information to provide in such a petition) and other pertinent law does not support the trial court's assumption that individuals may only petition once for such relief.

Appellant cites *In re I.L.P.*, 965 A.2d 251 (Pa. Super. 2009), a case in which the parents of twins who were birthed through the assistance of a

gestational carrier, sought in 2008 to amend the twins' birth record, after initially (successfully) amending their birth records in 2006. Wright's Brief at 48; *see In re I.L.P.*, 965 A.2d at 252. The *I.L.P.* Court held "that jurisdiction to entertain Appellants' 2006 **and** 2008 petitions (seeking alteration, amendment or modification of birth records) was properly before the Orphans' Court . . . ." *In re I.L.P.*, 965 A.2d at 256. This Court held that the trial court abused its discretion in denying the 2008 petition, and remanded with instructions to "reconsider its ruling given our conclusion that it does have the authority to modify the decree appealed by Appellants." *Id.* at 258. We reach the same conclusion here.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2021